## CALDWELL, EX PARTE.

The constitution gives this court, by express grant, power to issue writs of supersedeas, but omits to define under what circumstances the writ may issue; nor has the legislature prescribed any rule to be observed in regard to such writs.

In the absence of statutory regulation, the rule of the common law will govern in a proceeding of this kind—this court possessing over this subject the whole power, as exercised by all the courts of England.

This power results from the general grant of authority to this court, of supervising the adjudications of inferior tribunals, and to correct their proceedings if they assume to act without authority of law, or oppressively, or in a manner not authorized by law.

When a party would be entitled to this writ at common law, it will be granted by this court, upon proper application.

To entitle him to this writ, as a principal remedy, such facts must be established as show that the inferior tribunal had no jurisdiction, at the time of pronouncing judgment.

The issuance of a writ of error, and supersedeas to stay proceedings until the case could be heard here, has not the effect to divest the inferior court of jurisdiction, either of the case or the parties; but only suspends execution until determination in this court. If the judgment should be reversed, all power of execution over that judgment is gone forever—not by operation of the supersedeas, but by annihilation of the judgment.

*Ashley & Watkins*, for the petitioner.

*By the Court*, RINGO, C. J.   At the last term of this court, a motion was made for a writ of *supersedeas*, to supersede a judgment of the circuit court of Pulaski county, and certain writs of execution thereupon sued out and issued, founded upon a petition and exhibits then read and filed, showing that William Bell and John T. Graham, by the proceedings and judgment of the Pulaski circuit court, on the

26th day of November, 1840, recovered against Charles Caldwell, the present petitioner, a certain debt of $275 40, and $329 80 damages, adjudged to them for the detention, together with their costs in that suit expended; that he afterwards sued out and prosecuted in this court a writ of error to said judgment, and in due form obtained a supersedeas, forbidding the execution thereof, until the case could be adjudicated and determined by this court; that on the 1st day of October, 1841, while the case was pending on said writ of error in this court for adjudication, before the final judgment of this court therein was pronounced, said circuit court took cognizance of the case, adjudicated the same, and pronounced final judgment therein against him in favor of said Bell and Graham, for $282 90 debt, and $380 42 damages for the detention of said debt, and all the costs of suit in this behalf expended; that this court proceeded to adjudicate the case on said writ of error, and on the 15th day of July, 1841, pronounced its opinion and judgment therein, reversing the judgment of the circuit court, and remanding the case thereto, for further proceedings to be there had therein according to law, and not inconsistent with the opinion of this court then delivered; that this court afterwards, on the 6th day of August, 1841, suspended the 14th rule of practice previously adopted by it, so far as to suffer the clerk to deliver out a transcript of the opinion and judgment pronounced in this case during the term, and then specially adjourned the term to the 27th day of September, 1841; that during its session, after said adjournment, this court, on the petition of said Bell and Graham, set aside the opinion and judgment previously pronounced, reconsidered the case, and on the 6th day of November, 1841, again delivered its opinion and judgment, reversing the final judgment of the circuit court, first pronounced in the case, and remanding the case to that court, to be proceeded in according to law; that Bell and Graham on the 3d day of November, 1841, made a motion in the circuit court to set aside the judgment given in their favor by said court at that term on the 1st day of October preceding, which was objected to by Caldwell, and overruled by the court; that Bell and Graham, on the 27th day of October, 1841, sued out execution on the last mentioned judgment of the circuit court, upon, and to satisfy which, cer-

tain lands, the property of Caldwell, were levied and appraised, and not sold because no bid therefor could be obtained; whereupon said execution was returned wholly unsatisfied; and that said Bell and Graham, on the 27th day of March, 1843, sued out on said judgment a venditioni exponas, commanding the officer, to whom it was addressed, to make sale of the lands so levied, according to law, to satisfy said judgment, which writ was returnable on the 2d day of the November term of said circuit court in the year 1843.

In support of this motion, it is urged that the circuit court was divested of all jurisdiction over the case, pending the trial and adjudication thereof in this court, on the writ of error, and that the judgment of the circuit court pronounced therein, on the 1st day of October, 1841, is coram non judice and void, and therefore no execution, based upon it, can be valid; and that, inasmuch as both said judgment and the executions founded upon it are absolutely null and void, they ought to be superseded, and all proceedings thereon suspended forever.

The constitution, by express grant, clothes this court with the power of issuing "writs of supersedeas," but wholly omits to define the class of cases to which they shall be applied, or in what cases, and under what circumstances, they may issue; nor has the legislature thought proper to attempt to prescribe the rule to be observed in this respect. We have, therefore, according to the well established rules of interpretation in such case, to search the common law for the true rule, and thereby determine whether the facts exhibited present a case, in which the party is entitled to this remedy. If so, this court, possessing in regard to this subject, the whole power as exercised by each and all of the courts in England, is bound to grant the writ. This power results from the general terms of the grant and the obvious intention of the convention, to vest in this court plenary power, not only to supervise the adjudications of the inferior courts, but also to arrest their proceedings, if they assume to act without authority of law; and in many cases, where the tribunal possesses jurisdiction of the subject, but acts, in its exercise oppressively or in a manner not authorized by law. In these, and all similar cases, in which the party applying for the writ, would be entitled to it by

Caldwell Ex parte.

common law, it ought upon a proper application to be issued by this court. But after a most attentive and deliberate consideration of the case presented by the facts before us, we have come to the conclusion that the petitioner is not, by the common law, entitled to this writ, as a substantive or independent remedy. Whatever his right in respect thereto might be, if the writ was to be used only as subsidiary or auxiliary to a remedy sought by writ of error, whereby the judgment complained of might be regularly brought before this court for adjudication and revision, and the execution thereof be in the mean time suspended thereby.

To entitle himself to this writ, as an independent principal remedy, designed to suspend forever the power of the circuit court to execute the judgment of the 1st October, 1841, such facts must be established as show that the circuit court had no jurisdiction of the case when the judgment was pronounced. Do the facts as shown establish this proposition? We think they do not. Because neither the suing out and prosecution of the writ of error in this court, nor the issuing of the writ of supersedeas, to stay the execution of the judgment therein mentioned, until the case could be adjudicated and determined by this court on said writ of error, had by law the effect of divesting that court of its jurisdiction of the case or the parties; but taken together, their legal operations, as to that court, extended only to the suspension of its power to enforce the execution of its judgment, during the pendency of the suit in this court, on said writ of error, and its power in this respect, which was thus suspended, would be restored by mere operation of law, if the plaintiff in error should be either nonsuited, or his suit be dismissed for any cause whatever, or the judgment affirmed by this court. But if the judgment should be reversed, the power of that court to execute it would be forever divested, not by the operation of the supersedeas, but because of the overthrow and utter annihilation of the judgment itself by the authority and adjudication of this court. This, at least, is the legal effect of such judgment, although the judgment of the inferior court is neither, in reality, expunged nor obliterated from the record; and in this respect there seems to be a striking analogy as to the relation existing between this and the inferior courts here, and the Parliament and King's bench

in England; the principal difference consisting in the authority of this court to remand the case to the inferior court for further proceedings to be there had in the same cause, which the Parliament never does, but drives the party to institute his action anew; but when the judgment is affirmed, the King's Bench there, and the circuit court here, respectively, possess the power of enforcing their judgments; which, in our view of the question, goes far to prove that their jurisdiction is not divested by the proceedings in the Supreme Court, but is simply suspended upon certain conditions, in some particular respects. Thus, for instance, the power of enforcing the judgment is suspended, upon the plaintiff in error giving such security or bail in error as the law prescribes. But if this is admitted, the judgment may well be executed, notwithstanding the writ of error and the pendency of the case in the Supreme Court, at any time until the judgment is reversed. And it may be remarked here, that the power of enforcing the judgment is generally the only power over the subject remaining in the inferior court in such case, because its jurisdiction, for almost every other purpose, is determined, when it pronounces final judgment in the case; and then, but not before, it constitutes a case within the appellate jurisdiction of this court.

But if we are mistaken as to the principles here stated as law, the result must, in our opinion, be the same, because it is perfectly manifest, from the facts exhibited, that the circuit court had jurisdiction of the case when the judgment in question was pronounced. Its judgment previously given in the case had been reversed by this court, on the 15th of July preceding, and the case was then remanded to it, to be there proceeded in according to law; and the opinion and judgment of this court, reversing the judgment and remanding the case, had been duly certified and remitted to it by authority of this court, instead of a formal mandate being issued prior to the adjudication of the 1st October, 1841. This certainly restored to it complete jurisdiction of the case, whatever its powers may have been previously, pending the writ of error in this court; and the subsequent proceedings in the case in this court, after the 1st of October, surely cannot have the effect of divesting the circuit court of a jurisdiction with which it was then clothed. Besides which, the petitioner him-

self, on the 3d November following, opposed the motion of Bell & Graham, then made in the circuit court to set aside this judgment, which he now insists is illegal, oppressive, and absolutely void. His present application, therefore, so far as it relates to the judgment itself, and demands to have it superseded forever, comes certainly with a very bad grace.

The execution, issued on said judgment, appears to be in every respect authorized by law, and therefore cannot, upon this application at least, be recalled; although the venditioni exponas does not recite as much of the original execution as it ought to have done, and is in this respect informal, yet we do not consider it void, as the original execution is correctly referred to by its date, amount, return day, &c., though the writ itself is not, as in point of form it should have been, either literally or substantially recited; and the return thereof is sufficiently recited, and taken together, facts sufficient to authorize the mandate to the officer to sell the property levied and not sold, are shown; and as the petitioner can in no event be prejudiced by this writ, inasmuch as it only requires the officer to do that which the law obliged him to do without it, his application must be denied. Writ refused.