Scott, J. The only legitimate question presented by this record is, whether or not the appellant, who was the plaintiff below, adopted the proper form of action. It seems well settled by the most respectable authorities, that where a party is sued for an act done under color of legal process, if the process be void, the injury in that case being direct, the form of the action must be trespass vi et armis. And on the other hand, if the process be voidable merely, in that case the injm’y being consequential, the form of the action must be trespass on the case. It is also well settled, although this question is but incidentally involved in the decision of the one before us, that although a ministerial officer, who executes final judicial process in all respects regular on its face, whether issued from a court of limited or of general jurisdiction, having jurisdiction of the subject matter, may justify under such process when regularly executed and.returned, without showing the judgment on which if was founded; nevertheless the plaintiff in such proceeding or a stranger, for justification, must in addition to such process; also show a regular judgment. A distinction well founded, as we. conceive, not only in consideration of sound policy, but of justice and fair dealing to this class of officers; who being bound'to execute all such process, without looking further than to the process itself, it is but even-handed justice that its execution should be at the peril of those who caused it to be issued. To lay down any general rule applicable to all cases, by which the partition line between writs of execution void, and writs of execution voidable merely, could be distinctly drawn, would be extremely difficult, if not altogether impracticable, and we have not found in the books that this has ever been avowedly attempted, or if attempted successfully achieved. It cannot be true, as a general rule, that in every case where a record itself presents upon its face a legal obstacle to the issuance of an execution, that in such case the writ of execution is void, because that rule will embrace the case, where more than a year and a day has elapsed after judgment and before execution, where, according to the almost uniform current of numerous decisions, both English and American, the writ of execution when issued under such circumstances has been held voidable merely. Nor can it be true, as a general rule, that in every case, where a legal obstacle to such issuance is “ dehors” the record, that the writ of execution would be void as that would embrace the cases, adjudged to the contrary, of privileged persons, certified bankrupts and others. Cameron vs. Lightfoot, 2 Black. 1190. Tarleton vs. Fisher, Douglass 671. Much less can it be true, as a general rule, that in every case where “ the state of the facts existing at the time that the process issued, are such as to render the issuance of the process unlawful,” the writ of execution would be void, as this rule would embrace both classes of cases just noticed, as well as almost every other case of voidable writs of execution. In view then of the intrinsic difficulty, if not the eiple of % 1 after fbriefly iH®.|ight is asdfbefore utter impracticability of fixing upon law that may serve for a geueral rule tenl not attempt the enunciation of anylgpcfi noticing some authorities, from whip*we shed, proceed at once to present our us and announce our conclusion. 'as correctly Early alter the organization of this cotiS declared, as we conceive, in the case of Pope, Governor, to use of Heed vs. Latham et al., reported in 1 Ark. 66, in laying down a rule of practice to be applicable to all cases coming up here, whether by appeal or by writ of error, “ That there was no difference between the two classes of cases, and that they stood on the same footing, and must be governed by the same rules of proceedings,” which declaration, it was then said, was founded upon “principles conclusively settled upon reason and authority,” and “in unison with the uniform rules of practice in all supreme or appellate courts, and in strict conformity to our statutory provisions.” Then appropriate adjudged cases in other appellate tribunals taken there by -writs of error will reflect light on the question before us of no loss dubious character than those which have been taken up to such courts by appeals, where such appeals have been authorized and regulated by statutory provisions substantially similar to our own. To sustain the main question taken by the appellant that the appeal so radically affected the judgment below, that after the execution of the recognizance provided in such cases by statute, any process of execution issued upon it would be absolutely void, various authorities are cited, all of which we have examined and we will proceed to comment upon tho.se that seem most relied upon. The case of Davidson vs. Mull, reported in 1st Haywood's Rep. 364, was an appeal from the county court to the superior court of North Carolina, and was taken to that court under statutory regulations very similar to those which authorize and regulate appeals in Arkansas from justices of the peace to the circuit court, therefore although the court of North Carolina, in that case, say “As to the judgment of the county court which has been rendered in this case, that was not a final judgment as it was suspended, or rather nullified by the appeal, so much so that there can never afterwards be any proceedings on such judgment after it is appealed from,” the case can have no bearing on the question before us. The case of Penhallon et al. vs. Doane ad. cited from 1 Cond. R. 58, was a case in a prize court, and was expressly decided upon the opinion of Domat as to the effect of an appeal in the civil law. The case of Zeaton et al. vs. U. States, cited from 2 Cond. R. 256, was also a case in a prize court. In that case C. J. Maeshall, in delivering the opinion of the court, says, “ The majority of the court is clearly of opinion that in admiralty cases, an appeal suspends the sentence altogether, and it is not res-adjudicata until the final sentence of the appellate court be pronounced. The case in the appellate court is to be heard de ■novó as if no sentence had been passed.” Neither of these cases, then, can have any direct application to the question before us, inasmuch as, besides being governed by the civil law, they were heard in the appellate court de novo on their merits. And this seeifis to be the uniform practice on appeals, both from the prize court and the instance courts. The case of Stockton et al. vs. Bishop, 2 Howard (U. S.) Rep. 75, at first glance, would seem to have some application, but upon being subjected to scrutiny, falls far short of sustaining the position insisted on. In this casé, after the suing out of a writ of error from the supreme court of the United States, the execution of a bond, which operated as a supersedeas, and the service of a citation in due form and in apt time, the plaintiff sued out of the circuit court for Pennsylvania a writ of execution on the judgment thus superseded; and the motion in the supreme court of the United States, was to “Quash the fi. ia. as having been irregularly issued.” The entire opinion of the court is as follows, to wit: “Upon the facts stated in the application, there is no doubt that the writ of error, bond and citation having been given in due season according to law, operated as a stay of execution, and that a supersedeas ought to be issued from this court to supersede and quash, the same as prayed for in this motion. Indeed the issuing of the execution was wholly irregular, and it might have been quashed by an application to the court below; but it is equally competent for this court to do the same thing in furtherance of justice. The motion is therefore granted and a supersedeas will be issued accordingly.” It will be perceived that the question now before us was not raised, neither was it necessarily involved, and the motion would doubtless have been granted, whether the court had regarded the process void or voidable merely. And the only indication that the process was looked upon as void is from the use of the word “irregular” in the opinion, which word, although in some of the cases it is used synonymously with “ void,” is by no means uniformly used by the courts in this sense, as will abundantly appear by a scrutiny of the cases; and even this dubious indication may be considered as fully repelled by the face of the process, that was issued in this case, ■which recites the writ of execution ordered to be superseded as having been “ unjustly, improvidently and erroneously issued.” The case of Runyon et al. vs. Bennett, reported in 4 Dana Ky. Rep. 598, goes to this extent and no further — being the only question involved — that is to say: that in case an habere facias upon a judgment in ejectment should be issued, and executed after a certificate of supersedeas from the clerk of the supreme court had been filed with the clerk in whose office the judgment in ejectment remained of record, and the plaintiff had notice of the supersedeas, before the issuance of the habere facias, that in ■ such case the habere facias should be quashed for irregularity and abuse of the power and process of the court, and restitution should be awarded; but whether the process so issued was void or voidable, was not raised or decided. In the case of Samuel Campbell vs. Amaziah Howard, reported in 5 Mass. 376, it is held that the effect of an appeal under the statutes of that State, is to make the judgment appealed from “wholly inoperative,” and that “when an appeal is allowed, the judgment no longer, in legal construction, remains in force, and cannot be the foundation of an action of debt. That this construction is not new. The question has frequently been before the court when a judgment appealed from, and not affirmed has been pleaded in bar to another action for the same cause, and it has been considered as no bar, as a judgment inoperative and not in force after the appeal allowed.” The doctrine of this case is unquestionably based upon the statutory provisions on this subject, regulating appeals in that State, which differ from ours in several particulars, as, while ours, upon the allowance of the appeal and the execution of the recognizance “ stays the execution,” the statute of Massachusetts enacts that “ no execution shall be issued by the common pleas on the judgment appealed from.” In the case of Dixon vs. Dixon, reported in 2 Bos. & Pul. 444, process of execution had been issued after writ of error and after the execution of the recognizance provided for stay of execution in such cases by St. 3 Jac. 1, Ch. 8, which statute provides that “ No execution shall be stayed upon any writ of error for the recovery of any judgment given upon any obliga- , tion with condition for the payment of money only, unless such person or persons in whose name such writ of error shall be brought with two securities, such as the court shall allow of, shall first before such stay made, be bound unto the party for whom such judgment shall be given by recognizance in double the sum adjudged to be recovered by such judgment, to prosecute such writ of error with effect, and also satisfy and pay the debt, damages and costs adjudged upon the said judgment, and all costs and damages to be recovered for the same delaying of execution.” And the causes, shown by the plaintiff against malting- a rule nisi absolute to set this execution aside because it had been irregularly issued, that is to sa3r, 1st, that the party himself, who had sued out the writ of error, had not, as well as two securities entered into the recognizance, the two securities only having done so; and 2dly, that the amount of the recognizance was double the amount of the judgment appealed from without the addition of the interest accrued, were both adjudged insufficient and the rule was made absolute. But there is nothing in the case or in the opinion of the court to indicate in any degree that the objection that the process was void, was either made or entertained; on the contrary, the inference is strong that it was regarded only as erroneous process. We conceive then, that none of the authorities relied upon by the plaintiff in error sustains his position. Among the authorities cited on the other side, the case of Bradley et al. vs. Wisdom, decided in 1759 by the court of King’s Bench, and reported in 2 Burrow, 756, seems most in point, but by no means directly so. This was an action in ejectment, which was not within the statute, 3 Jac. 1, chap. 8. The defendant, Wisdom (the landlord) had, upon the tenant’s refusing to appear, made himself a defendant in the place of the casual ejector against whom judgment was signed for want of appearance, and the plaintiff having obtained judgment against Wisdom (the landlord) had afterwards on leave, no cause having been shown to the contrary, taken out execution against the casual ejector, and under it, had obtained possession of the premises. But Wisdom had, before the motion for leave was filed, sued out a writ of error. The remedy sought in the King’s Bench, where Wisdom’s writ of error was pending, was to have this writ of habere facias possessionem set aside and the possession of the premises restored. But although it was agreed on all hands that the writ of error could not have been sued out in the name of the casual ejector, and could only have been sued out, as it was, in the name of Wisdom, the new defendant, and although the writ of error, in this wise sued out, had been held in Edwards vs. Edwards, and was still regarded by the court as sufficient cause against the plantiff’s application for leave to sue out the habere facias, still, forasmuch as Wisdom had failed to appear and show his writ of error foy cause against the plaintiff’s application for leave, the court refused the motion. This decision evidently turned upon the pure technicality, that although the writ of error operated to stay execution against Wisdom (the landlord) who had, after judgment by default against the casual ejector, been substituted in his place, yet it did not operate to stay the execution of the judgment against the casual ejector rendered in the same court, until it was shown as cause against the application for leave to sue out execution on that judgment. Here, like the case above remarked upon, reported in Dana's Rep. the court refused to set aside the process of execution, and restore the possession, and for the same reason, that is .to say, although the writs in both instances were issued after supersedeas, they were issued before notice — that is, in the case from Dana, before notice ffled with the clerk, and in this case before technical notice as to the judgment against the casual ejector, although this judgment was a part of the suit, the other judgment in which was actually staid by the writ of error — an extremely refined technicality. The case of Shaver vs. White & Dougherty, cited from 6 Mun. Rep. 110, although not bearing upon the particular question we have been investigating, throws some light on another part of the case before us. This was an action of trespass vi et armis bi’ought because the defendant had, by false pretences and iniquitously sued out an attachment against the plaintiff, and had levied it upon three hundred head of cattle. The judgment obtained in this attachment was afterwards perpetually enjoined by the court of errors of Tennessee. The court of appeals of Virginia held that, for redress of this injury, case and not trespass was the proper remedy, and, in delivering their opinion, say, “The act complained of was unaccompanied with force — the defendant was only seeking redress of an injury by the regular forms of law. If he has gone out of his proper sphere and has endeavored to make the forms of law subservient to the malignity of his views, if he has instituted the action or proceeded with malice and without probable cause, then'indeed is ho responsible for Jais conduct, but not in trespass. The action adapted to such a state of things is a special action on the case.” Then none of these authorities determine the question before us, although it may be deduced from most of them that the courts are slow to determine as absolutely void any process of execution that is founded on a regular subsisting judgment of a court of competent jurisdiction of the subject matter, though it may have been issued over some legal obstacle existing either upon the face, or which may exist de hors the record, but seems rather to prefer, as far as may be practicable and consistent with the well established forms of justice, to hold all such as voidable merely. And if this be the true exposition of the law, as we take it to be, it cannot be doubted that its foundations are laid in principles of sound public policy, in view of the frailty and imperfections of our nature, and of the mischief that must flow into the community from a too stringent rule on this-subject, in an age of the world when multifarious and complex pecuniary operations, in such rapid succession transpire. And especially when it is remembered that the ministers of justice, under our constitution and laws, are so amply armed, not only with all the time-worn writs of the common law, but with many other devices, to which the exigencies of modern times have given birth, all ready to do the high behests of the law in sustaining and perpetuating formal and substantial justice. After looking at the case before us, in the light of the authorities examined, and applying the principles we have recognized, derived from the authorities cited on both sides and others not cited, including the case of Ex parte Caldwell, reported in 5 Ark. 390, we hold that the legal effect of the appeal and of the execution of the recognizance provided in such case by the statute, is, in the language of the statute, “to stay the execution;” that upon the circuit court and its judgment it is identically the same, in effect, as would be the suing out of a writ of error accompanied by the recognizance provided in such case; that in neither case is the judgment itself affected by the stay of its execution; but in both cases a legal prohibition rests upon the circuit court from executing the judgment appealed from until such time as that prohibition may be removed either by operation of law or by the judgment of the supreme court. The former would occur when neither the appellant or the appellee appeared in the supreme court at any time during the proper return term of the appeal; and the latter, when the supreme court shall dismiss the appeal or writ of error, or affirm the judgment below. But in each of these cases the judgment itself of the court below would remain regular, valid and unimpaired, and consequently operate as a lien on real estate, as is provided by the statute, up to the day when it might be reversed by. the supreme court. And in case of reversal, such reversal would not operate as by continuing and perpetuating this legal prohibition resting on the court below, but by its utter destruction and annihilation of the judgment itself. And if at any time, after appeal and recognizance and before reversal and before the death of the defendant, or any one of them (if there be more than one) process of execution should be sued out, it would be competent either for the supreme court, in furtherance of justice or the circuit court, in which the record of the judgment appealed from remains, to supersede such process of execution. And the party causing it to be sued out, would expose himself to be punished by the circuit court as for a contempt in abusing the power and process of that court, and also subject himself to an action on the case at the suit of the party injured by such process. But the process itself would not be void, because it was issued upon a regular judgment in esse, the parties to which had not been changed, and against a part, in esse, competent to raise the question of irregularity. On the contrary, should such execution be issued on a judgment against two or more defendants, after one of them should die, it would be void absolutely, because being void as to one material part, it could not be upheld and supported as valid as to the residue; and besides, it might be levied upon land which might be held by persons strangers to the judgment, and this would invade one of the great principles upon which our security depends, under a government of laws, that no person shall be put out of his freehold or lose his goods and chattels unless he be first duly brought to answer, or be prejudged of the same by due course of law, In support of which principle, the courts have ever held a decided and unequivocal language. Therefore, as the process of execution, under color of which the supposed trespass was committed, was voidable merely and not void, case and not trespass, was the proper remedy; wherefore, as there is no error in the judgment below, let it be affirmed.